UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   ROSA LINDA GUZMAN GHAFFARI,

Debtor.                                                   Case No.: 24-10453-j11

## MEMORANDUM OPINION REGARDING
## U.S. BANK'S MOTION FOR RELIEF FROM STAY

THIS MATTER comes before the Court on U.S. Bank's[1] Motion for Relief from Stay (the "Stay Relief Motion") as to the property at 9531 Via Salerno, Unit 33, Burbank, California, 91504 (the "Via Salerno Property"). (Doc. 44). Pro se Debtor Rosa Linda Guzman Ghaffari filed a response (Doc. 56), and U.S. Bank filed a reply (Doc. 79).[2] The Court held a final, evidentiary hearing on the Stay Relief Motion on December 18, 2024. (Doc. 200). At the hearing, Debtor appeared pro se and Janet Spears appeared on behalf of U.S. Bank. The Court admitted U.S. Bank's exhibits 1 through 6 without objection. The Court heard testimony by Debtor, Edward Hyne, a Nationstar representative, and Jonathan Goldrich, a certified real estate appraiser.

After considering the evidence presented at the final hearing on the Stay Relief Motion and related proceedings as noted below and the arguments of the parties, and being otherwise sufficiently informed, the Court will grant U.S. Bank's Stay Relief Motion.

---

[1] The movant's full name is "U.S. Bank National Association, as trustee, successor in interest to Bank of America, National Association, as trustee, successor in interest by merger to Lasalle Bank, National Association, as trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2007-1." (Doc. 44 at 1).

[2] Contrary to Local Bankruptcy Rule 7007-2, Debtor did not seek the Court's permission to file her surreply (Doc. 119). *See* NM LBR 7007-2 ("Surreplies require leave of the Court."). Debtor's surreply largely reiterates the arguments Debtor made in her Response. (Doc. 56).

# FINDINGS of FACT

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the parties to and subject matter of the Stay Relief Motion. *See* 28 U.S.C. §§ 1334 and 157, and the standing order of reference of the United States District Court for the District of New Mexico, entered March 19, 1992. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

2.    Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   DEBTOR'S BANKRUPTCY and PLAN FOR REORGANIZATION

3.    On May 3, 2024 (the "Petition Date"), Debtor, an individual, filed a voluntary petition under chapter 11 of the Bankruptcy Code commencing the present bankruptcy case. (Doc. 1).

4.    On May 28, 2024, Debtor filed her Schedules and Statement of Financial Affairs and on June 11, 2024, filed an Amended Summary of Assets and Liabilities, Schedule A/B, and Statement of Financial Affairs. (Docs. 20, 21, 28).

5.    On August 23, 2024, Debtor amended her voluntary petition to elect to proceed under Subchapter V. (Doc. 46).

6.    On Amended Schedule A, Debtor listed eleven properties in which she has an interest, as follows:

| Address of Property | Current Value | Current Value of the Portion Debtor Owns |
|---|---|---|
| 9531 Via Salerno, Unit 33, Burbank, CA 91504 | $ 750,000 | $ 750,000 |
| 11323 Blythe St, Sun Valley, CA 91352 | $ 880,764 | $ 880,764 |
| 4716 Taylor Ridge Rd., Albuquerque, NM 87120 | $367,960 | $ 367,960 |
| Residence: 5332 Canada Vista Pl NW, Albuquerque, NM 91504 | $ 400,300 | $ 400,300 |
| 801 Connelly St, Clovis, NM 88101 | $ 179,000 | $ 89,000 |

| | | |
|---|---|---|
| 1904 Grand Ave, Clovis, NM 88101 | $ 4,000 | $ 4,000 |
| 1914 Grand Ave, Clovis, NM 88101 | $ 4,000 | $ 4,000 |
| 2022 Chapparal Circle, Clovis, NM 88101 | $ 50,000 | $ 50,000 |
| 121 West 5th Street, Clovis, NM 88101 | $ 23,000 | $ 23,000 |
| 815 West 14th Street, Clovis, NM 88101 | $ 249,000[3] | $ 249,000 |
| 1321 Reid Street, Clovis, NM 88101 | | |

(Doc. 28 at 3–8).

7.    On Schedule D, Debtor listed five claims secured by real property, as follows:

| Address of Collateral | Creditor | Claim Amount | Collateral Value |
|---|---|---|---|
| 9531 Via Salerno, Unit 33, Burbank, CA 91504 | U.S. Bank[4] | $ 821,000 | $ 650,000 |
| 11323 Blythe St, Sun Valley, CA 91352 | U.S. Bank[5] | $ 512,385 | $ 512,385 |
| 4716 Taylor Ridge Rd., Albuquerque, NM 87120 | PennyMac Loan Services, LLC | $ 165,615 | $ 278,900 |
| 4716 Taylor Ridge Rd., Albuquerque, NM 87120 | U.S. Bank[6] | Not listed | Not listed |
| Residence: 5332 Canada Vista Pl NW, Albuquerque, NM 91504 | U.S. Bank[7] | Not listed | Not listed |

(Doc. 20).

---

[3] Debtor listed combined values for these properties. (Doc. 28 at 8).

[4] Debtor listed the creditor as "Mr. Cooper for America West Lender Services" and "Mr. Cooper (Servicer . . .) Nationstar Mortgage, LLC." (Doc. 20 at 20). Nationstar Mortgage, LLC, DBA "Mr. Cooper" is the servicer for the creditor U.S. Bank as defined in Footnote 1. (POC 7-1, 9-1).

[5] *Supra*, n. 4.

[6] The creditor for this claim is U.S. Bank Trust Company, National Association, as Trustee, as Successor-in-Interest to U.S. Bank National Association, Successor Trustee to Lasalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2007-He1, Asset-Backed Certificates Series 2007-He1. (POC 6-2). Select Portfolio Servicing, Inc. is the servicer of this loan. (*Id*.)

[7] The creditor for this claim is U.S. Bank National Association, not in its individual capacity but solely as trustee of NRZ Pass-Through Trust XII. (POC 5-1). Fay Servicing, LLC is the servicer of this loan. (*Id*.)

8.	Proofs of claims related to secured debt total $1,960,055.74. (POC 4-1, 5-1, 6-2, 7-1, 9-1, 10-1). Except for the New Mexico Taxation & Revenue Department claim, Debtor had not filed objections to these claims as of the date of the final hearing on U.S. Bank's Stay Relief Motion. The filed proofs of claims related to secured debt are:

| Address of Collateral | Creditor | Claim amount | Claim No. |
|---|---|---|---|
| 9531 Via Salerno Unit 33, Burbank, CA 91504 | U.S. Bank[8] | $ 818,822.52 | 9-1 |
| 11323 Blythe St, Sun Valley, CA 91352 | U.S. Bank[9] | $ 839,384.01 | 7-1 |
| 4716 Taylor Ridge Road NW, Albuquerque, NM 87120 | PennyMac Loan Services, LLC | $ 165,024.78 | 4-1 |
| 4716 Taylor Ridge Rd NW, Albuquerque, NM 87120 | U.S. Bank[10] | $ 20,838.90 | 6-2 |
| Residence: 5332 Canada Vista Pl NW, Albuquerque, NM 87120 | U.S. Bank[11] | $ 113,757.15 | 5-1 |
| All real and personal property | New Mexico Taxation & Revenue Department | $ 2,228.38 | 10-1 |

9.	On October 15, 2024, Debtor filed a Plan of Reorganization for Small Business under Chapter 11. (Doc. 94).

10.	On November 20, 2024, Debtor filed an Amended Chapter 11 Small Business Subchapter V Plan of Reorganization. (Doc. 144).

11.	On November 26, 2024, Debtor filed a "Supplement to Amended Official Form 425 for Bankruptcy Chapter 11 ISC Subchapter V to Amended Plan of Reorganization." (Doc. 156).[12]

---

[8] *Supra*, n. 4.
[9] *Supra*, n. 5.
[10] *Supra*, n. 6.
[11] *Supra*, n. 7.
[12] For purposes of this Opinion, the Court will consider Documents 144 and 156 collectively as Debtor's "Plan." After the close of the evidence and the conclusion of the hearing on December 18, 2024, Debtor filed another amended plan (Doc. 197) on December 30, 2024, to set forth her entire plan in a single document as directed by the Court. Thereafter, on December 30, 2024, and on, at least, January 2, 3, 6, and 16, 2025, Debtor filed amendments to the plan filed on December 30, 2024. (Docs. 197, 201, 202, 207, 210, 211,

12.     In the Plan, Debtor states that she owes $517,000 in arrears on a loan associated with the Blythe Street Property. (Doc. 156 at 3).

13.     The Plan classifies claims and interests as follows:

Class 1: Allowed Secured Claims: claims secured by real property.

Class 2: Allowed priority claims: Any allowed tax claims that are entitled to priority under Bankruptcy Code Section 507(a)(8).

Class 3: Allowed General Unsecured Non-Priority Claims. Consisting of all allowed unsecured non-priority Claim, including but not limited to claims arising from general unsecured debts and unsecured deficiency claims.

Class 4: Allowed Claims of Insiders: No creditors in this class 4.

Class 5: Allowed interest in the Debtor: consisting of equity interests in the Debtor.

(Doc. 144 at 22-23).

14.     Debtor states in the Plan that "Classes 3 and 5 are impaired under this Plan." (Doc. 144 at 23.)[13]

15.     The Plan treats claims and interests as follows:

Administrative claims. Except for fee claims, all allowed administrative claims will be paid in full on the plan effective date unless the Debtor and holder of the claim agree otherwise, subject to any necessary court approval. Allowed fee claims will be paid as soon as practicable after confirmation. (Doc. 144 at 20-21). Administrative claims consist of a claim by Palmer & Co. and a "claim by Debtor of gap expenses for the Estate." (*Id.* at 27).

Class 1 (Allowed Secured Claims).

(a)     U.S. Bank Claim Secured by the Via Salerno Property. The amount in arrears ($491,000) will be reduced 50% to $240,500. The arrearages will be paid in monthly

_____

213, 215, 217, 219, 223). Because these documents were filed after the close of evidence, for purposes of this opinion the Court will disregard the plan filed on December 30, 2024, and the amendments to that plan.

[13] On pages 24 to 25 of the Plan, Debtor listed the claims and interests but (1) reversed classes 1 and 2 such that Class 1 includes priority claims and Class 2 includes secured claims and (2) omitted Class 5. (Doc. 144 at 24–25). The Plan in different places refers to Class 2 priority claims as Class 1 claims and Class 3 claims. (Doc. 144 at 24, 28).

installments of $1,160.57 over 30[14] years at an interest rate of 3.5% and with no pre-payment penalty. The new principal balance will be paid over 30 years at an interest rate of 3.5% and with no pre-payment penalty. A $100,000 balloon payment will be due on the new principal balance at the end of 30 years. The combined monthly payment of the arrearages and new principal balance will be $2,540.00. The Plan reserves the right to bifurcate the claim if the value of the property is less than the mortgage balance. (Doc. 156 at 1–3).

      (b)    <u>U.S. Bank Claim Secured by the Blythe Street Property</u>. The amount in arrears ($517,000) will be reduced 50% to $285,500. The arrears will be paid over 30 years at an interest rate of 3.5% with no pre-payment penalty. The principal balance will bear interest at a rate of 3.5%. No monthly payment amount is stated. (Doc. 156 at 3).

      (c)    <u>U.S. Bank Claim Secured by the Canada Vista property</u>. The interest rate on the loan will be reduced to 4.5% per annum. Taxes of $289.03 will continue to be escrowed as it is currently done. The property will remain insured. The loan will not otherwise be modified. The current monthly payment is $1,571.90. The loan will mature in December 2036. (Doc. 156 at 4-5).

      (d)    <u>U.S. Bank Claim Secured by the Taylor Ridge Property</u>. The interest rate on the loan will be reduced from 10.75% to 3.5%. There will be no balloon payment of $20,000 at the end of the loan. The loan otherwise will not be modified. (Doc. 156 at 6–7).

<u>Class 2 (Allowed Priority Claims)</u>. Debtor will pay all Allowed Class 2 Claims in full on the later of the Effective Date and the date such Class 2 Claim becomes allowed. (Doc. 144 at 24).

<u>Class 3 (Allowed General Unsecured Non-Priority Claims)</u>. Class 3 is an impaired class. All class 3 creditors made student loans. Debtor will pay all allowed Class 3 Claims, on a pro rata basis, from disposable income over a period of 3 to 5 years depending on available cash. (Doc. 144 at 24). The Plan refers to Attachment E but there is no such attachment to the Plan. The Plan also provides for payment of Class 3 claims, pro rata, on the later of the Plan effective date and the date the claims are allowed. (Doc. 144 at 28).

<u>Class 4 (Allowed Claims of Insiders)</u>. No creditors are in this class. (Doc. 144 at 23).

<u>Class 5 (Allowed Claims of Equity Interest Holders)</u>. Under "Class 5," Debtor stated that she is the sole equity security holder of Debtor's two companies and

---

[14] In a different section of the Plan, Debtor states, "Payment arrearages will be addressed by loan modification, with terms extending over 10 to 20 years at a negotiated interest rate of 3.5%." (Doc. 144 at 24).

that she holds 95% ownership of Renaissance Labor Management, Inc. and 100% ownership of Lor-Tay, Inc. (Doc. 144 at 25-26).

16.    Counsel for U.S. Bank represented at the final hearing that her client would not accept the proposed terms for restructuring the Salerno Property Loan stated in the Plan. (*See* Doc. 156).

17.    The Plan does not treat the secured claims of PennyMac Loan Services, LLC, or the New Mexico Taxation and Revenue Department.

18.    There is no evidence of the total amount Debtor would be required to pay holders of secured claims each month if the Plan is confirmed or of the factual basis for the 50% reductions in the amount of arrearages (totaling $526,000) proposed by the Plan with respect to U.S. Bank claims secured by the Via Salerno and Blythe Street Properties.

19.    Other Plan provisions include: (i) a 15-day grace period after notice of default (Doc. 144 at 29); (ii) failure to pay within the grace period constitutes grounds for conversion or dismissal of the bankruptcy case (*id*.); (iii) rejection of an executory contract with American Home Shield. (*Id*.)

20.    The "liquidation analysis" contained in the Plan states: "Debtor does not have the intention to liquidate except for 2 empty lots." (Doc. 144 at 36).

21.    Debtor did not present evidence of a liquidation analysis or projections with respect to the ability of the Debtor to make payments under the Plan.

22.    There is no meaningful projection in the Plan with respect to the ability of the Debtor to make payments under the Plan. Instead, the Plan provides that it will be funded as follows.

> The Debtor will fund the plan through Income derived from rentals owned by Debtor, some of Debtor's social security benefits consisting of 22% payment to the Estate monthly; from some income from Debtor's corporation consisting of 25% monthly, and from Leased corporation mainly owned by Debtor of which a portion will be allocated to the Estate consisting of 25% of the income paid to Lessor, the Debtor.

(Doc. 144 at 27).

## III. INDEBTEDNESS OWED TO U.S. BANK and COLLATERAL

23.     Debtor financed the acquisition of the Via Salerno Property in February 2007 with a loan for $430,000 (the "Via Salerno Property Loan"). (U.S. Bank Ex. 1).

24.     To secure the Via Salerno Property Loan, Debtor executed a Deed of Trust granting the lender a lien against the Via Salerno Property, described as follows:

> THE REAL PROPERTY IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS: A CONDOMINIUM COMPRISED OF. PARCE 1 THAT PORTION OF LOT 2 OF TRACT NO, 27214, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 871 PAGES 34 TO 37 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT 33 ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 14, 1977 AS INSTRUMENT NO. 77-159449 OF OFFICIAL RECORDS OF SAID COUNTY.
>
> PARCEL 2: AN UNDIVIDED 1/70TH INTEREST IN AND TO THAT PORTION OF LOT 2 OF SAID TRACT NO 27214 SHOWN AND DEFINED AS "COMMON AREA" ON SAID CONDOMINIUM PLAN PARCEL 3: NO-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE ENJOYMENT, MAINTENANCE, DRAINAGE REPAIR, ENCROACHMENT, SUPPORT AND FOR OTHER PURPOSES, ALL AS DEFINED AND SET FORTH IN THE DECLARATION AND THE SUPPLEMENTARY DECLARATION HEREINAFTER REFERRED TO AS BEING INCORPORATED HEREIN BY REFERENCE THERETO.
>
> FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 2401-048-125; SOURCE OF TITLE IS DOCUMENT NO. 05 1044475 (RECORDED 05/04/05)

(U.S. Bank Ex. 1).

25.     As of the Petition Date, the balance owed on the Via Salerno Property Loan was $818,822.52. (U.S. Bank Ex. 1 at 2; Hyne Testimony).

26.     The current fair market value of the Via Salerno Property is $645,000. (U.S. Bank Ex. 5).

27.     Debtor has no equity in the Via Salerno Property because the amount owed on the Via Salerno Property Loan is $818,822.52 and the value of the Via Salerno Property is $645,000.

28.     The amount necessary to cure defaults under the Via Salerno Property Loan as of the Petition Date was $495,819.56. (U.S. Bank Ex. 1 at 2; Hyne Testimony).

29.     The total monthly payment amount on the Via Salerno Property Loan is $3,239.34. (U.S. Bank Ex. 1 at 4).

30.     In the seven months between the Petition Date and the hearing on the Stay Relief Motion (May to December 2024), Debtor made four post-petition payments on the Via Salerno Property Loan totaling $10,879.02. (U.S. Bank Ex. 3 at 23; Hyne Testimony). No post-petition payments were made on the Salerno Property Loan in October or November 2024.[15] (Hyne Testimony).

31.     The Via Salerno Property is a condominium within the Cabrini Villas condominium complex. (U.S. Bank Ex. 5, "Residential Appraisal Report"). It has two stories, three bedrooms, two-and-a-half baths, and an attached garage. (*Id*.)

32.     The Via Salerno Property is Debtor's "second home." (Dtr. Testimony).

33.     Debtor's daughter lives in the Via Salerno Property. (*Id*.)

34.     Debtor does not charge rent or receive income from the Via Salerno Property. (*Id*.)

---

[15] In her Response, Debtor argues that U.S. Bank has "inaccurate(ly) portray(ed) . . . Debtor's post-petition payment status." (*Id*. at 4–5). However, Debtor did not proffer evidence disputing U.S. Bank's calculation of her post-petition payments. The Court recessed the hearing to allow Debtor to retrieve some documents from her home about which she questioned Mr. Hyne. Debtor returned with two documents, which the Court designated as Debtor's Exhibit A. The first document is "page 3 of 23" of an untitled transaction history showing a principal balance of $409,476.88 on May 17, 2024. The second document is a three-page letter dated November 19, 2024, to Debtor from Mr. Cooper, U.S. Bank's loan servicer, titled "Informational Statement," showing the amount to bring the account current as of December 1, 2024, was $501,592.68, and payments in 2024 totaling $10,879.02. Debtor did not move for admission of Exhibit A, and the Court did not admit it into evidence. Even if it had been admitted, Exhibit A is consistent with the other evidence of the amount of Debtor's post-petition payments.

35.     The Cabrini Villas Homeowners' Association ("HOA") fees are $780.00 per month. (*Id*.)

## IV.     DEBTOR'S INCOME and EXPENSES

24.     On Schedule I, Debtor stated that her income on the Petition Date was $8,836.80 per month, consisting of $6,100 from "rental property" and "operating a business, profession or farm," $77 in interest and dividends, and $1,359.80 from Social Security. (Doc. 20 at 35).

25.     On Schedule J, Debtor stated she had monthly expenses of $3,558.40, consisting of $1,562.16 for rental or home ownership expenses, $286.21 for homeowner's insurance, $200.00 for home maintenance and repairs, $260 for utilities, $415 for basic living expenses, $208 for vehicle insurance, $411.21 for other insurance, $115.82 for maintenance, repair and upkeep expenses, and $100 for professional fees. (*Id*. at 37–38).

26.     Debtor stated on Schedule J that her monthly net income on the Petition Date was $5,201.40. (*Id*. at 38).

27.     Debtor's September and October 2024 profit and loss statements show the following income and expenses (which excludes Social Security income and may exclude income from Renaissance Labor Management, Inc. and/or Lor-Tay, Inc.):

| Income | Sep-24 | Oct-24 |
|---|---|---|
| 11323 Blythe Street rental income | 2,900.00 | 2,900.00 |
| Connelly Rental | 1,000.00 | 1,000.00 |
| Taylor Ridge Rental | 1,775.00 | 1,775.00 |
| Chaparral Circle | 750.00 | 750.00 |
| Other Primary Income 815 West 14th Street | | |
| Reid House Rental | | |
| Rent 815 W 14th | 1,000.00 | |
| **TOTAL INCOME** | **7,425.00** | **6,425.00** |
| **Expenses** | | |
| Auto Insurance | 194.74 | 194.67 |
| Bankruptcy court fees | 20.40 | |
| Bankruptcy fees for photocopies | | 76.10 |
| Printing and Photocopying | 4.29 | 18.30 |
| Software and apps | | 18.83 |
| Insurance | | 91.83 |
| Property Insurance | | 97.49 |
| Property Insurance 1321 Reid rental | 193.42 | |
| Property Insurance 801 Connelly rental Allstate | 139.94 | 139.99 |
| Property Insurance for Canada Vista house & office (corporate) | 210.64 | 209.60 |
| Insurance for 121 West 5th Street property insurance Clovis, NM | | 1,233.27 |
| Insurance for property Chaparral Circle | | 288.64 |
| Taxes paid | | |
| Utilities | | |
| Phone Service | | |
| UST Quarterly fees | | 260.00 |
| Post Petition Blythe Mr. Cooper | | |
| Post Petition Fay LLC Canada Vista | 1571.90 | 1571.90 |
| Post Petition PennyMac Taylor Ridge 1st | 1333.12 | 1333.12 |
| Post Petition Select Portfolio Services TR 2nd | 215.02 | 215.02 |
| Post Petition Via Salerno Mr. Cooper | 3239.34 | |
| Vehicle gas and fuel | 10.00 | |
| **TOTAL EXPENSES** | **7132.81** | **5748.76** |
| **NET INCOME** | **292.19** | **676.24** |

(U.S. Bank Ex. 3, 4).

## V.    ADDITIONAL FINDINGS

28.    Debtor has not satisfied her burden of proving that she has a reasonable possibility of confirming a plan within a reasonable time under which she retains the Via Salerno Property. Among other things, Debtor has not shown that the Plan is feasible or that she can confirm a feasible plan.

29.    Debtor has not shown there is a reasonable possibility of confirmation of a plan within a reasonable time.

## DISCUSSION

Relief from the automatic stay is governed by 11 U.S.C. § 362(d),[16] which permits the Court to "grant relief from the stay . . . , such as by terminating, annulling, modifying, or conditioning such stay" on two grounds. The first ground for granting stay relief is "cause, including the lack of adequate protection of an interest in property of such party in interest." § 362(d)(1). Under the second ground, the Court may terminate, annul, modify, or condition the stay to permit "an act against property" when "(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization." § 362(d)(2).

For the following reasons, the Court will deny U.S. Bank's Motion to modify the stay based on the first ground, cause, but will grant U.S. Bank's Motion to modify the stay under the second ground because Debtor has no equity in the Via Salerno Property and, even if the property is necessary to Debtor's reorganization, she has not shown the property is necessary to an effective reorganization.

## I.    Modifying the Stay for Cause

Section 362(d)(1) permits terminating, annulling, modifying or conditioning the stay for "cause." The bankruptcy court enjoys "wide latitude in crafting relief from the automatic stay [for

_____

[16] Unless otherwise indicated, references to "§" or "§§" refer to sections of Title 11 of the United States Code, 11 U.S.C.

cause]." *Delaney-Morin v. Day* (*In re Delaney-Morin*)*, 304 B.R. 365, 369 (9th Cir. BAP 2003). "Cause" for relief from the automatic stay under § 362(d) is "a separate discretionary basis on which the bankruptcy court may lift the stay." *Carbaugh v. Carbaugh (In re Carbaugh),* 278 B.R. 512, 525 (10th Cir. BAP 2002). Because the Bankruptcy Code does not further define "cause," the Bankruptcy Court must make a discretionary determination of whether to grant relief from the automatic stay on a case-by-case basis. *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987). "The moving party has the burden to show that "cause" exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place." *In re Busch*, 294 B.R. 137, 140–41 (10th Cir. BAP 2003); *See In re Jim's Maint. & Sons Inc.*, 418 Fed. Appx. 726, 728 (10th Cir. 2011). A debtor must meet this burden with evidence that the stay should not be modified. *Busch*, 294 B.R. at 140–41.; *see* § 362(g)(2).

The Court will not modify or terminate the automatic stay for cause. U.S. Bank asserts that stay relief is warranted due to the "lack of adequate protection." (Doc. 44 at 3). *See* § 362(d)(1) (providing that the automatic stay may be modified for "cause, including the lack of adequate protection of an interest in property of such party in interest"). "A secured creditor lacks adequate protection if the value of its collateral is declining as a result of the automatic stay" and the creditor is not protected against such decline in value by a security cushion. *In re 1504 Harney Associates, L.P.*, 1997 WL 34879445, at *2 (Bankr. D. Neb. Mar. 31, 1997)); *In re Brutsche*, 2012 WL 526047, at *3 (Bankr. D.N.M. Feb. 16, 2012) (same). The value of a creditor's collateral may decline, for example, if its market value is declining or if a debtor does not pay property taxes or does not insure the property. *See In re Young*, 2011 WL 3799245, at *7 (Bankr. D.N.M. Aug. 29, 2011) (stating that a creditor may not be adequately protected if the debtor has not paid "property taxes having priority over the creditor's lien" or insured the property).

U.S. Bank argues that Debtor's "failure to make contractual payments constitutes cause for relief under § 362(d)(1)." (Doc. 44 at 4). But that unqualified assertion[17] does not address whether U.S. Bank is adequately protected, and U.S. Bank did not present evidence, or even argue, that the value of its interest in the Via Salerno Property is declining because of the automatic stay. U.S. Bank also argues that, if Debtor receives rent from the Via Salerno Property, she "is using said rents without Court approval . . . []," which is "cause to dismiss or convert a chapter 11 case." (Doc. 44 at 5 (citing § 1112(b)(4)(D)). The Court need not address this argument because Debtor is not receiving rent from the Via Salerno Property. *Supra*, ¶ 17. Finally, although U.S. Bank asserts that the Court should consider factors set forth by the Second Circuit in *In re Sonnax Industries*, 907 F.2d 1280 (2nd Cir. 1990), it neglects to analyze the factors under the facts of this case. (*Id*. at 3). The factors in *Sonnax* pertain to whether to modify the automatic stay when there is pending litigation in another forum. *In re Sonnax*, 907 F.2d at 1287. U.S. Bank did not assert in its Motion or establish at the hearing that it has initiated litigation in another forum that is subject to the automatic stay. Hence, it has not established a basis for examining the *Sonnax* factors in this case. In sum, U.S. Bank has not met its initial burden to show cause for stay relief under § 362(d)(1).

## II. Modifying the Stay when the Debtor has no Equity in the Property, and the Property is not Necessary to an Effective Reorganization

U.S. Bank next asserts that the stay should terminate as to the Via Salerno Property because (1) Debtor has no equity in the Via Salerno Property and (2) the Via Salerno Property is not necessary to an effective reorganization as Debtor has not shown she will be able to confirm a plan within a

---

[17] The cases on which U.S. Bank relies do not apply here because they address a debtor's failure to make payments required *under a confirmed plan*. *See*, *e.g*., *In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993); *In re Fennell*, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012); *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986). Debtor's Plan has not been confirmed and therefore does not impose such an obligation on her.

reasonable time. (Doc. 44 at 5); § 362(d)(2). The "party requesting stay relief has the burden of proof on the issue of the debtor's equity in property." § 362(g)(1). Once the movant has shown the debtor does not have equity in the property, the burden of proof shifts to the party opposing stay relief, here the Debtor, to show the property is necessary to an effective organization. § 362(g)(2).

A.   Equity

"A debtor "has no equity in property ... when the debts secured by liens on the property exceed the value of the property." *In re Gindi*, 642 F.3d 865, 875 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) (quoting 3 Collier on Bankruptcy, *supra* ¶ 362.07[4][a]). U.S. Bank met its burden to establish that Debtor has no equity in the Via Salerno Property by presenting evidence based on which the Court has found that (1) Debtor's total indebtedness to U.S. Bank secured by the Via Salerno Property as of the Petition Date was $818,822.52, including $495,819.56 in prepetition arrears, the escrow deficiency, fees, and costs, and (2) the value of the Via Salerno Property is $645,000.[18] Although Debtor testified at the final hearing that the value of the Via Salerno Property is $890,000, and stated in her Surreply that "[p]roperties within the Cabrini Villa area have recently sold for over $900,000," she did not present an appraisal or any evidence of value other than her opinion of value.[19] (Doc. 119 at 2). The Court did

---

[18] U.S. Bank presented convincing evidence of the amount of debt secured by the Via Salerno Property and the value of that property. In addition, U.S. Bank's proof of claim relating to its claim secured by the Via Salerno Property is prima facie evidence of the claim's validity and amount. *See* Fed. R. Bankr. P. 3001(f) ("A proof of claim signed and filed in accordance with the [Federal Rules of Bankruptcy Procedure] is prima facie evidence of the claim's validity and amount.") and U.S. Bank's Ex. 1 at 4 (U.S. Bank's Proof of Claim); Ex. 5.

[19] Debtor did refer to an appraisal by Randy Sonns that she filed on the docket, but that appraisal is of the property at 11323 Blythe Street in Sun Valley, California (the "Blythe Street Property"), which he valued at $890,000. *See* (Doc. 189 at 11.) Hence, even if the appraisal had been proffered in evidence at the final hearing, the Blythe Street Property appraisal is irrelevant to the value of the Via Salerno Property.

Moreover, on Schedule D, Debtor stated that the amount of U.S. Bank's claim is $821,000 and the value of the collateral securing the claim—the Via Salerno Property—is $650,000. (Doc. 20 at 20). On

not find Debtor's testimony about the value of the Via Salerno to be persuasive and has found that the value of the Via Salerno Property is $645,000. Debtor does not have equity in the Via Salerno Property.

      B.  <u>Necessary to an Effective Reorganization</u>

Since U.S. Bank established Debtor has no equity in the Via Salerno Property, the burden shifted to Debtor to show the property is "necessary to an effective reorganization." *In re Kadlubek Family Revocable Living Tr.*, 545 B.R. 660, 665 (Bankr. D.N.M. 2016) (quoting § 362(d)(2)(B)). To meet this burden, Debtor had to show "not merely" that "if there is conceivably to be an effective reorganization, this property will be needed for it" but also that "the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." *In re Gindi*, 642 F.3d at 875 (quoting *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375–76 (1988). "Property is necessary if it furthers the interests of the estate through rehabilitation or liquidation." *Kadlubek Family*, 545 B.R. at 665. However, the "necessity of the property is only important to the extent that it exists simultaneously with a reasonable possibility of reorganization . . . ." *Kadlubek Family*, 545 B.R. at 665. A debtor must demonstrate "that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is insufficient." *In re Albany Partners, Ltd*., 749 F.2d 670, 673 n.7 (11th Cir. 1984).

The Court, having considered the proposed Plan and the evidence at the final hearing, and having taken into account Debtor's pro se status, finds and concludes that, even if the Via Salerno

---

Amended Schedule A/B, Debtor stated that the current value of the Via Salerno Property is $750,000. (Doc. 28 at 3). In short, both of Debtor's valuations of the Via Salerno Property in her schedules are lower than the amount owed to U.S. Bank secured by the Via Salerno Property.

Property is necessary to Debtor's reorganization, Debtor has not shown there is a reasonable possibility of her confirming a plan within a reasonable time as required by § 362(d)(2) to prevent relief from the stay.

Debtor did not suggest at the hearing that she has any plan in prospect other than the Plan. Debtor has not shown there is a reasonable prospect of confirming a plan within a reasonable time for two reasons: first, Debtor's Plan is not confirmable on its face; and second, even if the Plan were not facially defective, Debtor has not shown that there is a reasonable possibility it will be confirmed.

### 1. *The Plan is facially defective.*

Section 1129(a)(1) provides that the Court may not confirm a plan if the plan does not comply with the applicable requirements set forth in § 1129(a). In addition, in a case to which subchapter V of chapter 11 applies, a plan must comply with the requirements of § 1190. If a plan does not comply with those requirements, it cannot be confirmed. The Plan is facially unconfirmable because it does comply with applicable requirements set forth in §§ 1129(a) and 1190.

Under § 1190(1)(B) and (C), a subchapter V a plan must include a "liquidation analysis" and "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." This information assists creditors in deciding whether to consent or object to the plan, and in assessing whether the plan is feasible. *See* Hon. Paul W. Bonapfel (FN1), *Subchapter V Is Good for Creditors*, Am. Bankr. Inst. J., August 2024, at 36, 37 (2024) (stating that these requirements provide "the critical information that creditors need"); *cf.* § 1125 (a)(1) ("adequate information" in a disclosure statement is "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .").

The Plan does not contain a liquidation analysis as required by § 1190(1)(B). Pursuant to § 1191(a), the confirmation requirement of § 1129(a)(7) applies in a subchapter V case. Section 1129(a)(7)(A)(ii) requires that creditors and interest holders in nonaccepting classes, with a limited exception not applicable here, must receive or retain at least as much under the plan as they would receive if the debtor's assets were liquidated in a hypothetical chapter 7 case on the effective date of the plan. That is known as the "best interest of creditors" requirement. *In re The Vaughan Co., Realtors*, 543 B.R. 325, 341 (Bankr. D.N.M. 2015). The purpose of the liquidation analysis required by § 1190(1)(B) is to enable creditors to assess whether that requirement has been satisfied.

While Debtor's Plan includes a section titled "Liquidation Analysis," in that section Debtor stated only, "Debtor does not have intention to liquidate except for 2 empty lots." (Doc. 144 at 36). Debtor misunderstands the liquidation analysis requirement. The required analysis is based on a hypothetical liquidation of Debtor's assets on the plan effective date in a hypothetical chapter 7 case. It is not based on an actual liquidation. Debtor's statement does not allow creditors to assess whether the best interest of creditors requirement of § 1129(a)(7) has been satisfied.

Further, the Plan does not include "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization" as required by § 1190(1)(C). *See* Official Form 425A (stating that [t]he Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business."). Debtor's Plan does not include a projection of cash flow during the life of the Plan and Debtor's that includes projected income and projected expenses. The projected expenses must include projected plan payments, business expenses, and living expenses. The projection typically is a line-item projection. Mere statements that Debtor will devote her rental income and certain percentages of Social Security and

income from other sources do not show whether she has sufficient income to fund the Plan. *See* § 1129(a)(11) (a debtor's proposed payments must be feasible).

In addition, Debtor's plan does not classify claims and provide for the treatment of claims in accordance with §§ 1122 and 1123. Debtor has classified all secured claims in the same class in violation of § 1122(a), including claims secured by different collateral. Under that section, all claims in the same class must be substantially similar. Claims secured by different collateral are not substantially similar and therefore such claims may not be placed in the same class. *In re New Hope Hardware, LLC*, No. 20-40999-PWB, 2020 WL 6588615, at *3 (Bankr. N.D. Ga. Sept. 9, 2020); *In re Batista-Sanechez*, 502 B.R. 227, 231 (Bankr. N.D. Ill. 2013). Claims of different creditors secured by the same collateral but with different lien priorities are not substantially similar and therefore may not be placed in the same class. *Couture Hotel Corp.*, 536 B.R. 712, 733 (Bankr. N.D. Tex. 2015). Because voting to accept or reject a plan is done on a class-by-class basis, Debtor's misclassification of claims in the Plan has tainted the voting process.

The Plan is also unconfirmable on its face because it fails to treat the PennyMac Loan Services, LLC secured claim or provide that the claim is unimpaired. The Plan also impermissibly includes 50% reductions in the amount of arrearages, totaling $526,000, with respect to U.S. Bank claims secured by the Via Salerno and Blythe Street Properties. There is no provision in the Bankruptcy Code permitting such reductions in the amount of pre-petition arrearages under a loan.

These defects[20] by themselves do not show that Debtor could not propose a plan that complies with §§ 1122, 1123, 1129(a), and 1190(1), but they do show a lack of basic understanding of subchapter V of chapter 11. The plan filed on December 30, 2024, is substantially the same as the Plan and suffers from the same defects. In addition, the December 30, 2024 plan (1) has been sent to

---

[20] The Court has not attempted to identify all defects in the Plan.

creditors along with a ballot in accordance with the Court's order fixing deadlines for the Debtor to transmit plan packages and for creditors to vote and file objections to confirmation of the December 30, 2024 plan and (2) is already the subject of a confirmation hearing set for February 20 and 21, 2025. (Docs. 152, 197.) Debtor has attempted to amend the December 30, 2024, plan at least eight times without leave of the Court. However, such amendments require Court approval, as amendment would necessitate alteration of the scheduling order entered November 22, 2024, and extension of the plan package mailing deadline and voting and objection deadlines, as well as a rescheduled final confirmation hearing keyed to those deadlines.

2. *Even if the Plan were not facially defective, the Debtor has not shown that she has a feasible plan in prospect.*

Debtor has not shown that she has a feasible plan in prospect. There is no evidence regarding the total amount of monthly or other periodic payments required under the Plan. Further, Debtor's testimony about the amount of payments to creditors Debtor can feasibly make was too vague and general for the Court to determine whether she can propose a feasible plan. For example, Debtor testified that she "expect[s] to get income from other properties that have not been rented so far" and that she has "other properties not rented because of repairs needed and other things . . . ." However, she did not identify the "other properties" or specify which properties she plans to rent, how much rental income she anticipates, how much repairs will cost, or when the repairs will be completed. She further testified that she plans to sell "the properties that are not being used and have a high insurance cost[]" including two properties in Clovis, New Mexico and possibly one property in Albuquerque, New Mexico. But she did not provide evidence of the value of those properties or how or when she intends to market and sell them. The Plan does not require Debtor to sell or surrender any properties. Debtor also testified that she has a business that, while it has not been open for over four years because

of "hardship," "will generate money once [she] open[s] it in March 2025." But she did not describe the business or provide any evidence that it will generate income at all, much less in amounts sufficient to support her Plan.

Debtor's Monthly Operating Reports ("MORs") for September and October 2024, which the Court admitted at the final hearing without objection, do not support Debtor's assertions of her income and expenses. Debtor reported net income in those months of $292.19 and $676.24, respectively. (U.S. Bank Ex. 3, 4). However, the profit and loss statements are not useful as evidence relevant to Debtor's projected cash flow because they do not include income from Debtor's business or Social Security, and they omit significant expenses, such as Debtor's basic living expenses, the amount of the monthly mortgage payment on the Blythe Street Property, and homeowner association fees related to the Via Salerno Property. Debtor proposes to fund her Plan with 22% to 25% of the income from Social Security and her businesses, but the MORs do not address those income sources.

Finally, Debtor proposes to restructure the loans on the Via Salerno and Blythe Street Properties by, among other adjustments, reducing the interest rate to 3.5%. However, there is no evidence of the appropriate cramdown rate of interest on those properties. *See In re Gunnison Ctr. Apartments, LP*, 320 B.R. 391, 404–05 (Bankr. D. Colo. 2005) (holding the debtor had not shown that a reorganization plan was in prospect where the debtor proposed a reduced interest rate on a restructured loan but did not establish "whether this rate is consistent with the dictates of applicable law"); *In re Turner*, 2013 WL 6198205, at *3 (Bankr. D.N.H. Nov. 27, 2013) ("The appropriate interest rate used in a cramdown loan (the 'cramdown interest rate') is a factual determination made on a case-by-case basis."); *see* § 1129(b)(2)(A)(i)(II).

Not having presented evidence of the total amount of monthly payments to creditors required by a plan with a meaningful possibility of being confirmed, or of cash flow projections supporting

the feasibility of such a plan, Debtor has not carried her burden of showing she will be able to file a confirmable plan that is in prospect.

Debtor argues in her Response that the Court should not modify the stay because doing so would "severely impede the Debtor's efforts to reorganize and maintain her financial stability." (Doc. 56 at 5). She also argues in the Surreply that U.S. Bank has "consistently failed to address her numerous requests for loan modifications, which has exacerbated her financial hardship and prevented potential solutions." (Doc. 119 at 4–5). But neither argument addresses whether Debtor has a confirmable plan in prospect, which is the relevant test when considering stay relief.

## III. CONCLUSION

U.S. Bank did not meet its initial burden to show there are sufficient grounds for modification of the stay for cause under § 362(d)(1). However, because U.S. Bank established that Debtor has no equity in the Via Salerno Property, it was Debtor's burden to show that the Via Salerno Property is necessary to an effective reorganization. To meet this burden, Debtor was required to show that there is a reasonable possibility in this case of confirmation of a plan within a reasonable time. Debtor did not meet this burden. U.S. Bank is therefore entitled to modification of the automatic stay regarding the Via Salerno Property under § 362(d)(2).

The Court will enter a separate order granting U.S. Bank's Stay Relief Motion.

Robert H. Jacobvitz

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date Entered on Docket: January 31, 2025

Copy To:

Debtor
Rosa Linda Guzman Ghaffari
5332 Canada Vista PL NW
Albuquerque, NM 87120

Office of the U.S. Trustee
Jaime A. Pena
DOJ-UST
P.O. Box 608
Albuquerque, NM 87103-0608

Subchapter V Trustee
Bryan Scott Perkinson
Sonoran Capital Advisors
1733 N. Greenfield #104
Mesa, AZ 85205

Counsel for U.S. Bank, as Trustee
Janet M. Spears
Aldridge Pite, LLP
8880 Rio San Diego Drive, Ste 725
San Diego, CA 92108