## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   ROSA LINDA GUZMAN GHAFFARI,          Case No.: 24-10453-j11

Debtor.

## MEMORANDUM OPINION REGARDING
## THE UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT

THIS MATTER comes before the Court on the United States Trustee's ("UST's") Motion to Dismiss or Convert (the "Motion"). (Doc. 261). Pro se Debtor Rosa Linda Guzman Ghaffari filed two objections to the motion. (Doc. 267 and Doc. 268). The Court held a final, evidentiary hearing on the Motion on March 6, 2024, and took the Motion under advisement. Debtor appeared at the hearing pro se and Jaime Peña appeared on behalf of the United States Trustee. The Court admitted Debtor's exhibits 1 through 6 without objection, admitted the UST's exhibit A over Debtor's objection, and admitted the UST's exhibits C through Q without objection. The Court took judicial notice of the docket and the documents filed on the docket in this bankruptcy case. The Court heard testimony from Debtor, Dr. A.M. Ghaffari, and Randy Sonns, a certified real estate appraiser.

After considering the evidence presented at the final hearing and the arguments of the parties, and being otherwise sufficiently informed, the Court will grant the UST's Motion and dismiss the Debtor's chapter 11 bankruptcy case.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties to and subject matter of the Motion. *See* 28 U.S.C. §§ 1334 and 157, and the standing order of reference of the United States District Court for the District of New Mexico, entered March 19, 1992. This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

FINDINGS OF FACT

Debtor, an individual, filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 3, 2024 (the "Petition Date"). (Doc. 1). About three and a half months later, on August 23, 2024, Debtor amended her voluntary petition to elect to proceed under Subchapter V. (Doc. 46).

Debtor listed in her Amended Schedule A eleven properties in which she has an interest, as follows:

| Address of Property | Current Value | Current Value of the Portion Debtor Owns |
|---|---|---|
| 9531 Via Salerno, Unit 33, Burbank, CA 91504 | $ 750,000 | $ 750,000 |
| 11323 Blythe St, Sun Valley, CA 91352 | $ 880,764 | $ 880,764 |
| 4716 Taylor Ridge Rd., Albuquerque, NM 87120 | $367,960 | $ 367,960 |
| Residence: 5332 Canada Vista Pl NW, Albuquerque, NM 91504 | $ 400,300 | $ 400,300 |
| 801 Connelly St, Clovis, NM 88101 | $ 179,000 | $ 89,000 |
| 1904 Grand Ave, Clovis, NM 88101 | $ 4,000 | $ 4,000 |
| 1914 Grand Ave, Clovis, NM 88101 | $ 4,000 | $ 4,000 |
| 2022 Chapparal Circle, Clovis, NM 88101 | $ 50,000 | $ 50,000 |
| 121 West 5th Street, Clovis, NM 88101 | $ 23,000 | $ 23,000 |
| 815 West 14th Street, Clovis, NM 88101 | $ 249,000[1] | $ 249,000 |
| 1321 Reid Street, Clovis, NM 88101 | | |

(Doc. 28 at 3–8).

On Schedule D, Debtor listed five claims secured by real property, as follows:

| Collateral | Creditor | Claim Amount | Collateral Value |
|---|---|---|---|
| 9531 Via Salerno, Unit 33, | U.S. Bank[2] | $ 821,000 | $ 650,000 |

---

[1] Debtor listed combined values for these properties. (Doc. 28 at 8).
[2] Debtor listed the creditor as "Mr. Cooper for America West Lender Services." (Doc. 20 at 20). The creditor for this claim is U.S. Bank National Association, as Trustee, Successor in interest to Bank of America National Association, as Trustee, Successor by Merger to LaSalle Bank,

| Burbank, CA 91504 (the "Via Salerno Property") | | | |
|---|---|---|---|
| 11323 Blythe St, Sun Valley, CA 91352 (the "Blythe Property") | U.S. Bank[3] | $ 512,385 | $ 512,385 |
| 4716 Taylor Ridge Rd., Albuquerque, NM 87120 ("Taylor Ridge Property") | PennyMac Loan Services, LLC | $ 165,615 | $ 278,900 |
| Taylor Ridge Property | U.S. Bank[4] | Not listed | Not listed |
| Residence: 5332 Canada Vista Pl NW, Albuquerque, NM 91504 ("Residence") | U.S. Bank[5] | Not listed | Not listed |

(Doc. 20).

Secured creditors filed proofs of claims relating to the secured debt as follows:

| Collateral | Creditor | Claim amount | Claim No. |
|---|---|---|---|
| Via Salerno Property | U.S. Bank[6] | $ 818,822.52 | 9-1 |
| Blythe Property | U.S. Bank[7] | $ 839,384.01 | 7-1 |
| Taylor Ridge Property | PennyMac Loan Services, LLC | $ 165,024.78 | 4-1 |
| Taylor Ridge Property | U.S. Bank[8] | $ 20,838.90 | 6-2 |
| Residence | U.S. Bank[9] | $ 113,757.15 | 5-1 |
| All real and personal property | New Mexico Taxation & Revenue Department | $ 2,228.38 | 10-1 |

National Association, as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2007-1. (POC 9-1). Nationstar Mortgage, LLC, dba "Mr. Cooper" is the servicer for creditor U.S. Bank. *Id.*

[3] Debtor listed the creditor as "Mr. Cooper for: Nationstar Mortgage LLC." (Doc. 20 at 20). The creditor for this claim is U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America National Association, as Trustee, Successor by Merger to LaSalle Bank, National Association, as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certifications, Series 2007-1. (POC 7-1). Nationstar Mortgage, LLC d/b/a "Mr. Cooper" is the servicer for creditor U.S. Bank. *Id.*

[4] The creditor for this claim is U.S. Bank Trust Company, National Association, as Trustee, as Successor-in-Interest to U.S. Bank National Association, Successor Trustee to Lasalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2007-HE1, Asset-Backed Certificates Series 2007-HE1. (POC 6-2). Select Portfolio Servicing, Inc. is the servicer of this loan. *Id.*

[5] The creditor for this claim is U.S. Bank National Association, not in its individual capacity but solely as trustee of NRZ Pass-Through Trust XII. (POC 5-1). Fay Servicing, LLC is the servicer of this loan. *Id.*

[6] *Supra*, n. 2.

[7] *Supra*, n. 3.

[8] *Supra*, n. 4.

[9] *Supra*, n. 5.

The total amount of the secured claims is $1,960,055.74.

On October 15, 2024, Debtor filed a Plan of Reorganization for Small Business under Chapter 11. (Doc. 94).[10] On November 20, 2024, Debtor filed an Amended Chapter 11 Small Business Subchapter V Plan of Reorganization ("Amended Plan"). (Doc. 144).[11] Based on the Amended Plan, the Court entered an Order (I) Setting Deadlines for (i) Debtor to Mail Plan Packages to Creditors and Other Parties in Interest and (ii) for Creditors to Accept or Reject Debtor's Amended Plan and/or Object to Confirmation, and (II) Notice of Final Hearing on Plan Confirmation ("Scheduling Order").[12] (Doc. 152). The Scheduling Order fixed a deadline of January 3, 2025, for Debtor to mail copies of the Scheduling Order, the Amended Plan, and a ballot to all creditors and parties in interest. *Id.* After the entry of the Scheduling Order, Debtor filed a Supplement to Amended Official Form 425 for Bankruptcy Chapter 11 USC Subchapter V to Amended Plan of Reorganization ("Supplement") on November 26, 2024. (Doc. 156). The Supplement amended the Amended Plan.

The Court held a status conference on December 16, 2024.[13] (Doc. 199). At the status conference, the Court reminded Debtor of the January 3, 2025, deadline for her to mail plan packages fixed in the Scheduling Order. Because the Scheduling Order set a final confirmation hearing on February 20 and 21, 2025, the Court stated on the record that January 3, 2025, is the deadline for Debtor to file an amended plan in a single comprehensive document.

---

[10] UST's exhibit E.
[11] UST's exhibit F.
[12] UST's exhibit G.
[13] UST's exhibit H.

Debtor filed another amended plan ("Second Amended Plan")[14] (Doc. 197) on

December 30, 2024. The proposed treatment of secured claims in the Second Amended

Plan is as follows:

| Collateral | Claimant | Treatment |
|---|---|---|
| Via Salerno Property | U.S. Bank[15] | Reduce arrears by 50% to $240,500, with interest at 3.5% over 30 years; $100,00 of principal balance to be paid at end of term as a balloon payment |
| Blythe Property | U.S. Bank[16] | Reduce arrears by 50% to $258,500; reduce interest rate to $3.5% over 30 years |
| Taylor Ridge Property | PennyMac Loan Services, LLC | No treatment proposed |
| Taylor Ridge Property | U.S. Bank[17]/Select Portfolio Servicing | Reduce interest rate from 10.75% to 3.5%; no ballon note of $20,000 at end of loan; other loan terms to remain constant |
| | | |
| Residence | U.S. Bank/Fay LLC | Reduce interest rate to 4.5%; no arrears |

Thereafter, on January 2, 6, 10, and 16, Debtor filed several additional

amendments and corrections to the Second Amended Plan.[18] (Docs. 201, 210, 213, 215,

217, 219, and 223). The amendments and corrections consist of the following:

1. Notice of Motion to Correct Section 7.2 of Article VII of the Plan. (Doc. 201).
   This correction clarifies that the claims bar date is January 16, 2025, instead
   of November 7, 2024.

2. Debtor's Reorganization Plan Correction of Exhibit "C". (Doc. 210). This
   correction states that the mortgage arrears on the Via Salerno Property totaled
   $491,00 as of October 15, 2024, and proposes to reduce the arrears by 50%,
   resulting in a new arrearage balance of $245,500.

---

[14] UST's exhibit I.
[15] *Supra.,* n. 2.
[16] *Supra*, n. 3.
[17] *Supra*, n. 4.
[18] UST's exhibits J, K, L, M, O, and P.

3. Certificate of Notice (Doc. 211). Although this document is titled a Certificate of Notice and states that it relates to "Debtor's Reorganization Plan Correction of Exhibit 'C,'" it includes "Debtor's Reorganization Plan of Correction of 'Exhibit D.'" Exhibit D proposes to modify an unidentified loan (presumably the loan on the Blythe Property), with total arrears of $517,000, to reduce the principal balance to $409,000, and to reduce the arrears by 50% to $258,500. Later in the document, Debtor states that she "proposes keeping the $409,000 principal intact but moving $100,000 to a balloon payment at the end of the term," with a 7.5% interest rate, and a 20-year term. *Id.*

4. Debtor's Application for Approval to use Funds from Social Security, Lor-Tay, Inc. and Renaissance Labor Management Inc. (Doc. 213). This document requests approval to use portions of her income to satisfy the payment obligations under her reorganization plan, to include 22% of her social security income of $1,359.09 per month, 25% of the gross monthly income of $500 "from Renaissance"; 25% of gross monthly income of $1,590 from Lor Tay, for a total amount of $821.50. *Id.*

5. Debtor's Application for Payment of CPA Margi Palmer's Bills for September-October-and August 2024. (Doc. 215). This document proposes to pay Margi Palmer, CPA, $2,900 through Debtor's plan at the rate of $300 per monthly, commencing on the effective date of the plan, and continuing for ten months. *Id.*

6. Correction of Exhibit A of the Amended Reorganization Plan. (Doc. 217). This document proposes treatment of Select Portfolio Servicing, Inc.'s claim for a "corrected term" of ten years, with no balloon payment, with interest at 7.5%, payable in monthly installments of $246.54. *Id.* The stated principal balance is $20,769.50. *Id.* Later in the document, Debtor recites that the interest rate is 8.5%. *Id.* at p. 3.

7. Exhibit H: Treatment of Non-Secured Creditors. (Doc. 219). This document identifies a student loan to Nelnet in the amount of $47,122.09, a claim of Life West Chiropractic in the amount of $8880, identified as "disputed," a claim of PNM Electric Co., in the amount of $256.00, later corrected to $239.81; a claim of Gas Co. NM in the amount of $13.00, and a disputed claim of "$160,000+" of the IRS. *Id.* Debtor proposes to make $350.00 annual pro-rata distributions to these creditors (other than the student loan) for three years. *Id.*

8. Debtor's Application to Approve Payment Agreement of $300 per Month to Palmer & Co. – Plan Agreement. (Doc. 223). This document again states the proposed payment to Margi Balmer, CPA of "$300 per month for 10 months, totaling $2,900, as provided in the Plan." *Id.*

(together, the "Additional Amendments to Second Amended Plan").

Debtor's certificate of service with respect to the Second Amended Plan recites that Debtor mailed the Second Amended Plan "Section One (First 13 pages), along with the Certificate of Service, Notice Recipients, and Creditor List Matrix" by pre-paid first class mail to all creditors and interested parties on the creditor matrix on December 30, 2024. (Doc. 198). Debtor also filed several certificates of service on January 2, 2025, January 3, 2025, January 6, 2025, and January 16, 2025, which appear to relate to the Additional Amendments to Second Amended Plan. (Docs. 202, 203, 204, 205, 206, 207, 211, 218, 222, 224).

Debtor did not comply with the Scheduling Order because she did not mail complete plan packages that included the Second Amended Plan and the Additional Amendments to Second Amended Plan to all creditors and parties in interest by the January 3, 2025 deadline. Based on the certificate of service filed December 30, 2024, which stated that "Section One (First 13 pages)" was mailed, it appears that Debtor did not include a complete copy of the Second Amended Plan in her mailing. Nor did Debtor file a single, integrated, plan of reorganization.

Debtor filed the Additional Amendments to Second Amended Plan in an effort to make corrections Debtor believed would address deficiencies in the Second Amended Plan. Debtor may not have fully understood the Court's directive to file one single integrated document containing the entirety of her subchapter V reorganization plan.

Debtor's filings are difficult to read. Most of them include handwritten additions to the typed material. The font size is often quite large, and sometimes varies from page to page. Sentences sometime drop off at the end of one page of a document, and may or

may not be repeated on the following page. *See, e.g.,* UST's exhibits F, G, H, I, J, L, M, and O, and Debtor's exhibits 3, 4, 5, and 6.

At the final hearing on the Motion, Debtor submitted another Subchapter V plan ("Third Amended Plan"). (Exhibit 4).[19] Although Debtor testified that she intends that the Third Amended Plan be considered together with the Second Amended Plan and the Additional Amendments to the Second Amended Plan if her case is not converted or dismissed, it is unclear how the Third Amended Plan could be so considered.

The Third Amended Plan classifies claims and interests as follows:

Class 1: Secured Mortgage Claims
Class 2: General Unsecured Claims
Class 3: Executory Contracts and Unexpired Leases

The following claims are included in Class 1:

U.S. Bank – Salerno Property
PennyMac Loan Services (4716 Taylor Ridge Road)
Select Portfolio Servicing (Second Mortgage on Taylor Ridge)
Fay LLC (5332 Canada Vista Pl NW)
U.S. Bank (11323 Blythe Property)

Secured claims are not separately classified. The secured claims are treated in the same section of the Third Amended Plan where the claims are classified and in exhibits to the Third Amended Plan.

The Third Amended Plan places general unsecured claims in Class 3 and treats the claims in the section of the Third Amended Plan where the claims are classified except it treats HOA claims in an attachment. There are handwritten notes next to each unsecured claim listed in Class 3. The import of the handwritten notes with respect to proposed treatment of unsecured claims is unclear.

---

[19] The Third Amended Plan is filed of record at Doc. 283 as part of Debtor's Exhibit List filed in connection with the Motion.

The Third Amended Plan places executory contracts and unexpired leases in Class 3, except it deals with insurance policies in an attachment. The Third Amended Plan does not provide whether any executory contracts or unexpired leases are assumed or rejected but states that leases and insurance policies will continue under existing terms.

The Third Amended Plan does not seek to bifurcate any secured claim. In the section of the plan entitled Class 1 and in the Plan Implementation section the Debtor proposes to sell the Via Salerno property. But the plan gives no other details such as when the property will be sold or at what price. The Plan Implementation section of the Third Amended Plan also states that "[m]ortgage payments on Taylor Ridge and Canada Vista will continue" without further elaboration.

The proposed treatment of U.S. Bank's claim secured by the Blythe Street property is inadequate. It does not state the amount of the monthly payments that will be made (other than their being $3,14.02 per month available to make payments), the period over which payment will be made, or the interest rate.

The Third Amended Plan states that the loan to PennyMac Loan Services is current, that no arrears exist, and that no cure of default is necessary; and identifies the claims of Fay LLC and Select Portfolio Servicing as "unimpaired."

U.S. Bank file a proof of claim asserting a claim against the Via Salerno Property in the amount of $818,822.52 with accrued interest and other charges as of the petition date.[20] The Debtor filed an objection to the claim. (Doc. 227). The objection does not object to the total amount of the claim. It objects that under § 506(a) the amount of the secured portion of the claim should be limited to the fair market value of the collateral. Debtor's appraiser, Randy Sonns, valued the Via Salerno Property at $735,000 as of

---

[20] POC 9-1.

December 5, 2024.[21] Debtor's objection refers to U.S. Bank's appraised value in the amount of $650,000. That appraisal valued the Via Salerno Property as of the petition date (May 3, 2024).

U.S. Bank filed a claim against the Blythe Property in the amount of $839,384.01 with accrued interest and other charges as of the petition date.[22] Mr. Sonns appraised the Blythe Property with a value of $890,000 as of December 14, 2024.[23]

The Court admitted in evidence a Real Estate Purchase Agreement dated February 20, 2025, signed by Dr. Ghaffari on February 24, 2025, under which Dr. Ghaffari would purchase the Via Salerno Property for $558,840. [24] The Agreement provides for payment of a $10,000 earnest money deposit, with the balance of the purchase price to be "paid at closing via wire transfer or certified funds." Debtor filed the following motions relating to Debtor's proposal to sell the Via Salerno Property:  1) Debtor's Emergency Motion for Approval of Agreement Under FRBP 4001(d) (Doc. 272); and 2) Debtor's Motion for Approval of Agreement with Investor (Doc. 273).

The Motion for Approval of Agreement with Investor asks for Court approval of the Agreement, use of cash collateral if applicable, approval of the financing and security interest provision of the Agreement. It is not necessary for a debtor to obtain Court approval of financing for a non-debtor party. The Agreement has no provision requiring the Debtor to obtain financing and has no provision in which Debtor would grant a security interest.

---

[21] Exhibit 1.
[22] POC 7-1.
[23] Exhibit 2.
[24] Exhibit 3.

Dr. Ghaffari is Debtor's former spouse. Their daughter currently lives in the Via Salerno Property. Dr. Ghaffari has wanted to purchase the Via Salerno Property from Debtor for many years prior to the bankruptcy filing and is very motivated to purchase the home so their daughter has a place to live. Dr. Ghaffari testified that he is able to pay the earnest money deposit of $10,000, and that he may be willing to pay more than $558,840 to purchase the Via Salerno Property. There was no other evidence of Dr. Ghaffari's ability to pay the proposed purchase price.

Prior to the final hearing on the Motion, the Court granted U.S. Bank's motion for relief from stay as to the Via Salerno Property. (Doc. 248 and 249). In granting stay relief, the Court concluded that Debtor's subchapter V plan of reorganization (Doc. 144 and 156), was facially defective in several respects, including the failure to classify claims and provide for treatment of claims in accordance with §§ 1122 and 1123 because Debtor classified all secured claims in the same class. *See* Doc. 248, p. 19. In addition, the Court found that the Debtor's plan impermissibly reduced the arrearages on the claims secured by the Via Salerno Property and the Blythe Property by 50%. *Id.* The Court therefore concluded that Debtor failed to demonstrate a reasonable possibility of confirming a plan of reorganization within a reasonable time. *Id.* at p. 22.

Debtor has demonstrated an inability to file a confirmable plan on her own without the assistance of competent bankruptcy counsel even though she has been working continuously and diligently in her efforts to reorganize her financial affairs through this subchapter V case. Debtor has also been working diligently to find counsel to represent her, but to date, she has not been able to retain counsel. Debtor testified that one attorney she contacted told her to call after March 6, 2025, the date of the hearing on

the Motion. To date, no attorney has entered an appearance on behalf of Debtor in this bankruptcy case.

Debtor's latest attempts to correct her plan through the Second Amended Plan, Additional Amendments to Second Amended Plan, and Third Amended Plan, suffer from similar plan deficiencies found in the Court's ruling on U.S. Banks's motion for relief from stay. Debtor's Third Amended Plan continues to classify all secured claims together in Class 1; there is no separate section of the Third Amended Plan treating claims; and, for the most part, the proposed treatment of claims is inadequate.

## DISCUSSION

Section 1112(b)[25] governs involuntary dismissal or conversion of chapter 11 cases. Section 1112(b)(1) provides, in relevant part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

§ 1112(b)(1). The statutory directive of § 1112(b)(1) is that the court "shall" convert or dismiss if "cause" is shown unless the Court appoints a trustee or examiner. *See In re Picacho Hills Util. Co.,* 518 B.R. 75, 81 (Bankr. D.N.M. 2014) ("Once cause is established under § 1112(b), the Court must dismiss or convert the case, or appoint a Chapter 11 trustee . . . .").

However, § 1112(b)(2) contains an "unusual circumstances" exception to the statutory directive of § 1112(b)(1). Section 1112(b)(2) provides:

---

[25] All future statutory references in this Memorandum Opinion Regarding the United States Trustee's Motion to Dismiss or Convert are to title 11 of the United States Code.

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor . . .

    (i) for which there exists a reasonable justification for the act or omission; and

    (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2).[26]

*A. Whether "cause" exists.*

The UST as the party requesting dismissal or conversion bears the burden of demonstrating "cause." *Whetten*, 473 B.R. at 382 ("The movant bears the burden of establishing cause by a preponderance of the evidence."). The UST argues that cause exists because Debtor did not comply with the Court's Scheduling Order requiring Debtor to serve her plan packages by January 3, 2025. The UST also argues that Debtor does not have a confirmable plan on file and has demonstrated an inability to effectuate a plan.

"Cause" for dismissal under § 1112(b) includes, but is not limited to:

failure to comply with an order of the court;

unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code or Bankruptcy Rules]; and

failure to . . . file or confirm a plan, within the time fixed by [the Bankruptcy Code] or by order of the court[.]

---

[26] The itemized list in § 1112(b)(4) constituting "cause" for conversion or dismissal "is illustrative, not exhaustive." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012). *See also Picacho Hills,* 518 B.R. at 80 ("The list [of 16 grounds that constitute 'cause' for conversion or dismissal] is not exhaustive.").

§ 1112(b)(4)(E), (F), and (J).

In addition, though not enumerated in the statute, a debtor's inability to propose or effectuate a plan can constitute "cause" to dismiss or convert under § 1112(b). *See Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) ("Dismissal under § 1112(b) is appropriate where the debtor's failure to fila an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason."). "Inability to effectuate a plan arises when the debtor lacks the capacity 'to formulate a plan or to carry one out.'" *In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (quoting *Hall v. Vance*, 887 F.2d at 1044). The party requesting dismissal or conversion under § 1112(b) need not establish multiple grounds to demonstrate "cause," "'one ground for cause is sufficient standing alone' to justify 'for cause' dismissal [or conversion] of a Chapter 11 case." *In re Exigent Landscaping, LLC*, 656 B.R. 757, 765 (Bankr. E.D. Mich. 2024) (quoting *Reagan v. Wetzel (In re Reagan)*, 403 B.R. 614, 621 (8th Cir.. BAP 2009)).

### 1. *Failure to comply with an order of the Court*

Debtor has failed to comply with the Court's Scheduling Order which required her to mail complete plan packages to all creditors and parties in interest by January 3, 2025. She continued to file corrections and amendments to the Second Amended Plan after January 3, 2025, and mailed some of those documents after the January 3, 2025 deadline. The Debtor's certificate of service for the Second Amended Plan (Doc. 198) indicates that only the first thirteen pages of the Second Amended Plan were mailed to all creditors and parties in interest. Debtor may have misunderstood the Court's directive at the

December 16, 2024, status conference requiring Debtor to file one, complete, integrated plan. But the Court made it clear that the reason for the January 3, 2025, deadline to mail plan packages was to ensure that creditors and parties in interest received the plan with sufficient time to evaluate the plan and cast ballots and/or file objections to plan confirmation by the deadline fixed in the Scheduling Order. Because Debtor continued to file and mail corrections and amendments to the Second Amended Plan after the January 3, 2025, deadline, Debtor caused creditors and parties in interest to have insufficient time to evaluate and consider the Second Amended Plan and Amendments to Second Amended Plan prior to the deadline fixed in the Scheduling Order to vote or file objections to confirmation. The Court accepts that Debtor's Amendments to Second Amended Plan were her attempt to address deficiencies in the Second Amended Plan, that she was doing the best she could, and that she did not willfully intend to ignore the requirements of the Scheduling Order. But no matter Debtor's good intentions, her actions violated the Scheduling Order, rendering it impossible for the Court to hold a final confirmation hearing on the date set in the Scheduling Order. Debtor's failure to comply with the Scheduling Ordre constitutes "cause" to convert or dismiss this bankruptcy case under § 1112(b)(2)(E).

### 2. *Demonstrated inability to propose a confirmable plan*

Debtor has also demonstrated an inability to propose a confirmable plan in this bankruptcy case while she represents herself without counsel. It is difficult, if not impossible, to ascertain the contents of Debtor's plan of reorganization. The entirety of the plan consists of more than nine separate filings, including the Second Amended Plan, Amendments to Second Amended Plan, and Third Amended Plan. The contents of each

filing on its own are difficult to read inasmuch as they contain handwritten additions, different fonts, and incomplete sentences at the bottom of some pages that may or may not be repeated on the following page.

In addition, it appears that the Debtor's current plan, consisting of the Second Amended Plan, Amendments to Second Amended Plan, and Third Amended Plan, remains facially unconfirmable. For example, Debtor proposes to reduce the arrears on the Blythe Property by 50%, and pay $309,000 of the principal, with a $100,000 balloon payment at the end of the loan term. As the Court previously ruled in its Memorandum Opinion Regarding U.S. Bank's Motion for Relief from Stay (Doc. 248), there is no provision in the Bankruptcy Code permitting a reduction in the amount of pre-petition arrearages under a loan.

Even if the Court regarded the Third Amended Plan as the entirety of Debtor's proposed plan, the Third Amended Plan shows that Debtor is unable to propose a confirmable plan in this bankruptcy case while she represents herself without counsel. Like the Second Amended Plan, the Third Amended Plan continues to classify all secured claims in a single class, Class 1, even though they are secured claims of different creditors or claims secured by different collateral, contrary to the requirements of § 1122(a). By improperly including all secured claims in one class, Debtor has tainted the voting process because voting to accept or reject a plan is done on a class-by-class basis.

Debtor now proposes to sell the Via Salerno Property to Dr. Ghaffari for $558,840, yet U.S. Bank's total claim is $818,822.52. Debtor and Dr. Ghaffari arrived at the $558,840 sales price for the Via Salerno Property based on U.S. Bank's appraised value of $650,000, less anticipated commissions and closing costs. Under § 506(a), a

Debtor may "strip down" a secured claim against real property to the value of the collateral. *Wade v. Bradford*, 39 F.3d 1126, 1129 (10th Cir. 1994) ("[C]hapter 11 permits a debtor to strip a creditor's lien down to the value of the collateral.").

The proposed sales price of $558,840 does not satisfy the requirements of § 506(a) because it is less than the current fair market value of U.S. Bank's collateral. Debtor's appraiser valued the Via Salerno Property in the amount of $735,000 as of December 14, 2024. U.S. Bank's appraiser valued the Via Salerno Property in the amount of $650,000 as of the Petition Date (May 3, 2024). Debtor's appraised current fair market value of the Via Salerno Property is much higher than U.S. Bank's appraised value as of a date seven months earlier.[27] The proposed sale price is substantially less than either value.

Debtor filed this chapter 11 bankruptcy case on May 3, 2024, and converted the case to subchapter V on August 23, 2024. Since that time, she has demonstrated an inability to comply with the requirements of the Bankruptcy Code and has been unable, despite repeated efforts, to file a plan that is not facially defective. "[A] debtor cannot wallow in chapter 11." *In re BH S & B Holdings*, 439 B.R. 342, 351 (Bankr. S.D.N.Y.

---

[27] The Third Amended Plan does not seek to bifurcate the U.S. Bank claim secured by the Via Salerno Property into secured and unsecured claims. Even if a secured claim may be bifurcated under § 506(a) in connection with a § 363 sale not made pursuant to a confirmed plan under which the claim is bifurcated, Debtor's proposed sale price is insufficient to sell the property free and clear of liens under § 363.

On March 11, 2025, after the close of evidence on the Motion to Dismiss or Convert, Debtor filed a Motion to Approve Sale of Salerno Property Free and Clear of Liens Pursuant to 11 U.S.C. §§ 363(f) and 1129(b)(2)(A) (Doc. 289). Debtor's latest motion seeking to sell the Via Salerno Property proposes a purchase price of $650,000 with net proceeds of $610,000 to U.S. Bank to satisfy its lien against the property. (Doc. 289). The motion includes a request to sell the Via Salerno Property free and clear of liens pursuant to § 363(f), and it also proposes to confirm the sale through "Cramdown under § 1129(b)(2)(A)." *Id.* Attached to the motion is another motion asking the Court to deny or limit U.S. Bank from credit bidding because it would "deter other potential bidders and depress the sale price." That is an insufficient reason to limit a secured creditor from credit bidding. The Court cannot consider this latest filing in ruling on the Motion to Dismiss or Convert because it was filed after the close of evidence. But if the recent motion were considered, it further demonstrates Debtor's inability to reorganize in chapter 11 without the assistance of counsel.

2010) (quoting *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995)). "Cause" for dismissal exists where a debtor's "failure to file an acceptable plan after a reasonable time indicates its inability to do so." *Hall v. Vance*, 887 F.2d at 1044. Here, Debtor's inability to file a plan that is not defective on its face for nearly a year after the Petition Date and more than five months since converting to subchapter V, constitutes "cause" to dismiss or convert under § 1112(b).

### B. *Whether "unusual circumstances" exist.*

Having determined that "cause" exists under § 1112(b)(1) to dismiss or convert the Debtor's case, the Court will examine whether the unusual circumstances exception set forth in § 1112(b)(2) applies to prevent mandatory dismissal or conversion. Debtor has the burden of proof to show that the unusual circumstances exception applies.[28]

The Bankruptcy Code does not define "unusual circumstances," yet the plain meaning of the phrase suggests, as many courts have held, that the circumstances must be uncommon to chapter 11 cases generally.[29] Circumstances that do not qualify as "unusual circumstances" for purposes of § 1112(b) include, for example, disputes regarding the validity, priority, and amount of a creditor's claim, difficulty making plan payments due inherent financial pressures, and adversarial differences.[30] Here, Debtor urges the Court that she has diligently prosecuted this case and is doing the best that she can, and that, given her pro se status, the Court should afford her additional consideration with an

---

[28] *Whetten*, 473 B.R. at 382 ("Thus, once cause is demonstrated, the burden shifts to the opposing party to prove 'unusual circumstances.'").

[29] *See, e.g., In re Baroni*, 36 F.4th 958, 968 (9th Cir. 2022); *M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 870 (Bankr. S.D. Tex. 2023); *In re California Palms Addiction Recovery Campus, Inc.*, No. 22-40065, 2022 WL 2116643, at *16 (Bankr. N.D. Ohio June 10, 2022); *In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio 2009), *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, No. 3:08CV3012, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008).

[30] *Baroni*, 36 F.4th at 968.

Case 24-10453-j11    Doc 294    Filed 03/19/25    Entered 03/19/25 16:48:19 Page 18 of 23

opportunity to file yet another subchapter V plan, or additional amendments to the existing Second Amended Plan, Amendments to Second Amended Plan, and Third Amended Plan, so that she may achieve confirmation.

Debtor has been trying her best to comply with the requirements under the Bankruptcy Code and has and has worked hard and diligently to file a confirmable plan. But her pro se status is not a sufficient "unusual circumstance" that would require Court *not* to dismiss or convert Debtor's subchapter V case after "cause" has been established. "*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'" *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)). Debtor filed this chapter 11 bankruptcy case on May 3, 2024, and converted the case to subchapter V on August 23, 2024. She has had an ample opportunity to a confirmable plan.

### C. Whether dismissal or conversion is in the best interest of creditors and the estate.

Upon a finding of "cause" to dismiss or convert and no "unusual circumstances" that would prevent conversion or dismissal, the Court must determine whether to convert the case to chapter 7 or to dismiss the chapter 11 case, "whichever is in the best interests of creditors and the estate." § 1112(b)(1). Whether to dismiss or convert falls within the Court's sound discretion. *See Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515 (8th Cir. 2004) ("The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case." (quoting *In re Lumber Exch. Bldg. Ltd. P'ship*, 968 F.2d 647, 648 (8th Cir. 1992))). Relevant factors include: 1) whether the debtor would file another bankruptcy case following dismissal; 2) whether a chapter 7 trustee would be able to

reach assets for the benefit of creditors or is otherwise preferable to supervise the

bankruptcy estate and protect creditor interests; 3) whether conversion or dismissal would

maximize the value of the estate as an economic enterprise; and 4) whether the debtor

engaged in misconduct. *In re Sandia Resorts, Inc.*, 562 B.R. 490, 495 (Bankr. D.N.M.

2016).[31] It is also appropriate for the Court to consider the preferences expressed by

parties in interest, especially the UST, who serves as a neutral third party overseeing the

bankruptcy case. *Id.* at 496. *See also In re Mazzocone*, 183 B.R. 402, 411-12 (Bankr. E.D.

Pa. 1995) ("[W]here an interested party other than the debtor, particularly a completely

neutral, 'watchdog' party such as the USTE, feels strongly enough about the proper

disposition of a bankruptcy case to move for dismissal, we are even more strongly

---

[31] A more complete set of ten factors courts often applied to determine whether dismissal or conversion is in the best interests of the estate are:
(1) whether some creditors received preferential payments, [and] whether equality of distribution would be better served by conversion rather than dismissal;
(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
(3) whether the debtor would simply file a further case upon dismissal;
(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors;
(5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise;
(6) whether any remaining issues would be better resolved outside the bankruptcy forum;
(7) whether the estate consists of a "single asset;"
(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
(9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and
(10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.
*In re Sandia Resorts, Inc.*, 562 B.R. 490, 495–96 (Bankr. D.N.M. 2016) (quoting *In re Pettingill Enters., Inc.*, No. 11-12-10515 JA, 2013 WL 5350789, at *5 (Bankr. D.N.M. Sept. 23, 2013).
        Three additional factors are: "(11) The prospect of payment of any unpaid secured claims, chapter 11 administrative claims, priority claims and nonpriority unsecured claims in a converted chapter 7 case or after dismissal; (12) Whether conversion to chapter 7 would result in bankruptcy powers and procedures being used to benefit secured creditors without providing a material benefit to other creditors; and (13) Any other prejudice to parties in interest resulting from conversion or dismissal." *Sandia Resorts*, 562 B.R. at 496.

inclined to dismiss a case than if only the debtor is pressing for this result."), *aff'd,* 200 B.R. 568 (E.D. Pa. 1996).

No one factor is determinative, nor are the factors necessarily given equal weight. *Sandia Resorts*, 562 B.R. at 496. Overall, the Court considers the practical impact of conversion or dismissal on all of the parties to determine which result is in the best interests of creditors and the estate. *Id.* at 495.

Having considered the relevant factors, the Court concludes that dismissal, rather than conversion of this case to chapter 7, is in the best interests of creditors and the estate. First, U.S. Bank is the only creditor that has taken an active role in this bankruptcy case. U.S. Bank has already obtained relief from the automatic stay with respect to the Via Salerno Property. Second, the value of the Via Salerno Property is less than U.S. Bank's secured claim against the property, and it appears there is insufficient equity in the Blythe Property to yield a meaningful return the estate in a chapter 7 sale after deducting the costs of sale. Consequently, there is no equity in those properties that a chapter 7 trustee could realize for the benefit of creditors. Next, even though the UST's Motion asks for either dismissal or conversion, at the final hearing on the Motion the UST only requested dismissal. Dismissal will not cause undue harm to creditors or the estate. There is no indication that a trustee is needed to oversee the administration of a chapter 7 estate. Dismissal is in the best interest of creditors as a whole, particularly those whose claims are current and whose claims Debtor intends to keep current. Upon dismissal, creditors whose claim are in default may exercise remedies without the impediment of an automatic stay.

The Court recognizes that Debtor may simply file another chapter 11 case following the dismissal of this bankruptcy case. As previously determined, Debtor has demonstrated that she is unable to represent herself effectively in a chapter 11 case without the assistance of counsel and file a confirmable chapter 11 plan. Filing another chapter 11 case on the heels of this one without first obtaining competent counsel to represent her would likely also be unsuccessful and could be converted to a case under chapter 7 without significant delay. However, if Debtor is able to obtain counsel to represent her in a subsequent subchapter V bankruptcy case, her possibility of success would be greatly improved. An attorney would likely prefer to start afresh rather than attempting to correct what has already been filed in this bankruptcy case and deal with other issues that would arise. Thus, the practical effect of dismissal on all the Debtor and creditors as a whole is preferable to conversion.

## CONCLUSION

Based on the foregoing, the Court will grant the Motion. The UST has demonstrated "cause" under § 1112(b) to dismiss or convert this subchapter V case, and Debtor has not shown "unusual circumstances" that would prevent mandatory dismissal or conversion upon a finding of "cause." Dismissal, rather than conversion, is in the best interest of creditors and the estate. Finally, even though Debtor did not comply with the Court's Scheduling Order by failing to mail out complete plan packages by the January 3, 2025, the Court finds and concludes that Debtor's failure to abide by the Scheduling Order was not willful. Consequently, it is not appropriate to impose upon the Debtor any refiling restriction. *See* § 109(g)(1) (180-day refiling bar if the court dismisses the debtor's bankruptcy case "for willful failure of the debtor to abide by orders of the

court"). If the Debtor chooses to refile, the Court strongly encourages her first to retain competent bankruptcy counsel to represent her so she can maximize her prospects for a successful reorganization.

The Court will enter a separate order granting the UST's Motion and dismissing this bankruptcy case.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date Entered on Docket: March 19, 2025

Copy To:

<u>Debtor</u>
Rosa Linda Guzman Ghaffari
5332 Canada Vista PL NW
Albuquerque, NM 87120

<u>Office of the U.S. Trustee</u>
Jaime A. Pena
DOJ-UST
P.O. Box 608
Albuquerque, NM 87103-0608

<u>Subchapter V Trustee</u>
Bryan Scott Perkinson
Sonoran Capital Advisors
1733 N. Greenfield #104
Mesa, AZ 85205

<u>Counsel for U.S. Bank, as Trustee</u>
Janet M. Spears
Aldridge Pite, LLP
8880 Rio San Diego Drive, Ste 725
San Diego, CA 92108